Good morning, may it please the Court. Lori Schoenberg from the Federal Defenders of San Diego, representing the defendant-appellant in this case, Alfredo Flores-Barajas. This morning, I want to focus on whether the later development of probable cause in this case dispels the taint of Mr. Flores-Barajas' unlawful arrest at the border. In this case, the district court held that Mr. Flores-Barajas was arrested without probable cause when he was placed in a holding cell. The government does not argue here that probable cause existed when Mr. Flores-Barajas went into that holding cell. Instead, it relies upon Manuel to argue that the discovery of the marijuana in his case purged the taint of his arrest and allowed his statements to be admitted. Manuel does not apply here, though, because it addresses a completely different issue, whether ordering an arrest without probable cause may make the actual arrest and detention illegal. Excuse me, whether ordering an arrest without probable cause? Yes, that's correct. Manuel actually contended on appeal that his arrest on murder charges was illegal because, quote, it was ordered by tribal police before they had probable cause to believe that he had participated in the Howard slaying. Well, you see here there was no ordered arrest. As a matter of fact, the government might not contest it directly, but the government says it doesn't agree. And after reading the latest United States Supreme Court case on border searches and the cases that support that, it doesn't seem to me to be that he was ordered arrested either. Mr. Flores-Barajas was not ordered arrested. He was actually arrested without probable cause at the time that he was locked into the holding cell. Well, a Supreme Court president would argue against that. I mean, everybody who comes across the border, according to the Supreme Court, is subject to a detention. And here all they did was exactly what they did in the Hernandez case, was put him in a place where he was secure while they followed up leads on the car. So if you ask the people who were in charge of him, was he arrested, they say no. Much construed as an arrest, but I don't think Supreme Court precedent supports that. Well, what the Supreme Court precedent does say in Montoya v. Hernandez and also more recently in Flores-Montano, they say that a brief detention and questioning at the border is permissible under the Fourth Amendment. However, Hernandez, while recognizing that some brief detention and questioning is permissible, goes on to say that the Fourth Amendment requirement of probable cause before an arrest does not disappear at the border. I would disagree with the contention that Hernandez controls in this case, because in Hernandez, the defendant in that case was taken to a security office, but his handcuffs were removed at that point. It's very clear from all the precedent that in a detention you can handcuff somebody. That's correct, Your Honor. But in this case, Mr. Flores Barajas was locked into a holding cell with his wallet and identification removed. But this is a border situation. This is not your run-of-the-mill situation inside. This is a border situation. If you go back and you read Carroll and all the other cases that the recent Supreme Court case relies on, they talk about the inherent power of the government to stop anybody at the border. So I don't see how a detention at the border, even putting somebody in a cell like that, and according to the requirements you had to pass search somebody in a private place to begin with, necessarily can be construed as an arrest. I think you can only have an arrest when they say you're under arrest at the border. The Fourth Amendment requirements, as explicated by the Supreme Court, have never stated that saying you're under arrest makes something an arrest. What those cases state is that an arrest occurs within the Fourth Amendment when a reasonable person would believe that he or she is not free to leave. Now this court in Hernandez and Bravo have recognized that some detention So what's the detention then? According to Hernandez and Bravo, they say that some detention and questioning is permissible, but a detention ripens into an arrest when a reasonable person would feel that he or she is not free to leave after enduring the temporary detention occasioned by border crossing. But you're detained when you realize you're not free to leave too, right? Yes, that's correct. So a detention to an arrest has something to do with the time frame too, wouldn't it? It does have something to do with the time frame, yes. And in this case, by placing him in the locked holding cell after Mr. Flores Barajas had undergone some routine detention and questioning, that transformed his temporary detention recognized in cases like Bravo and Hernandez into an arrest. Was there testimony about the searching officer being there was only one other person alone or something that there was not, that that was part of the reason that he was There was nobody else available. There was no one else to watch him while he was being detained, or you're using the word arrested, but was there testimony in the lower court to that effect? There was testimony to that effect. However, the reasons for the officer putting him in the holding cell are irrelevant to whether he was under arrest at that point. I'm not sure they're relevant. I mean, I'm sure you've read the Flores-Montano, and that in turn refers us to United States v. Ramsey, where the Supreme Court reiterates that searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border, should by now require no extended demonstration. So it appears to me that the only reasonable construction of the facts in this case was that he was detained at the border while they legitimately pursued questions about the vehicle that he was driving in. So I think the district court was dead wrong in construing this border situation as an arrest. At any other place in the country, you might be absolutely right. This could be construed to be an arrest, but the border is different. The Supreme Court told us, you know, Flores-Montano, for the umpteenth time, slapped the Ninth Circuit across the wrist and said, cut it out when it comes to the border. The border is the border is the border. Your Honor, the Supreme Court in that case did not say that detention and questioning is without any limitation at the border. It did recognize that there is some routine detention and questioning that does have to occur because of the United States' right to basically prevent unlawful entrance from coming into the country. Respondent also argued he has some sort of Fourth Amendment right not to be subject to delay at the international border. Respondent points to no cases that shields entrance from inconvenience or delay at the international border. We think it clear that delays of one or two hours at international borders are not to be unexpected. Well, Your Honor, in Flores-Montano, Flores-Montano expressly recognized that a search of the vehicle, like the search that occurred in Flores-Montano's case with the disassembly of the gas tank, is different from situations involving personal dignity and privacy like other bodily searches at the border. So what should they have done with your client under these circumstances, under these circumstances? What they should have done with my client under these circumstances is they should have developed sufficient cause for arresting him. Well, how do they do that under these circumstances? You know what the personnel situation was like in these circumstances. Tell us what you think the Constitution required these officials to do. The Constitution required them to engage in more searching, questioning of Mr. Flores-Barajas to discover – Before they looked into the car? Yes, to confirm – So the Constitution required that they interrogate him before they look at the car. No, the Constitution requires that if there's something that arouses their suspicions, like they alleged in this case, then they should engage in questioning about that. And if there's – The Constitution prohibits them from looking at the car, which was what they had suspicions of? The Constitution does not prohibit them from conducting a routine search of the car. But in this case, the arrest preceded the search. And since the arrest was itself without – Well, but they said it wasn't an arrest. They simply said for security purposes, we had to put him in a place that was secure while we looked at the car. It was – it seems to me it was no more than your usual detention, especially under border circumstances. Your Honor – Were they supposed to let him go into the interior of the country? Well, no, Your Honor, but to measure whether something ripens into an arrest, you have to view it from the perspective of Mr. Flores-Barajas, not from why the officer – Where he can expect delays up to two hours. That's true that he could expect delays at the port of entry for up to two hours, but he doesn't expect to be locked. And where he can properly be handcuffed. He can be handcuffed temporarily – He can be put in a secure situation. It's the border. Yes, but under Hernandez and Bravo, he can be temporarily handcuffed and told that the handcuffing is only temporary. Here, he was never told that the restraint was temporary. So is that the difference? He wasn't told that the handcuffing was temporary? No, the difference was that he was locked in the holding cell and was never given any indication that he could leave. Your Honor, I would like to reserve some time for rebuttal unless you have other questions. Well, go ahead. This is interesting. We're not going to mess you up on a time thing. Go ahead now. Well, the crucial difference here between Hernandez and Bravo was, first of all, not only were the handcuffs in Hernandez and Bravo removed and the person was told, you know what, this is temporary, we're just going to take a look at your car and come back. Here, my client was put in a locked holding cell and had the door locked behind him. He had his wallet and identification removed. Hernandez and Bravo recognized that the Fourth Amendment requirement of, you know, probable cause does not disappear at the border and that someone can still be under arrest, even enduring the detention, which may be a lengthy occasion with border crossing formalities, when a reasonable person would not feel free to leave. After those formalities occurred, here they occurred. So you think that under these circumstances, given what they knew, they had to put him in an unsecure place unhandcuffed? Your Honor, what I would say is that... Is that what your argument is? They had to put him in a place that wasn't secure without handcuffs on? No, I'm saying that they could handcuff him and take him with them, but by placing him in a locked security cell without having sufficient cause to put him in that cell, they arrested him without probable cause. Thank you, Your Honor. We'll give you an opportunity to respond. Thank you. May it please the Court, Patrick O'Toole on behalf of the United States. Your Honors, as you well know, the United States Supreme Court decided Flores-Montano two days ago. I would like an opportunity, if the Court is interested in filing a very brief supplemental pleading, not to exceed five to ten pages within the next week relative to the effect of Flores-Montano, I think that this Court deserves the government's view on that. You think we need help? I think it helps. I think it helps for two reasons. If we had lost the case, I'm not so sure I would have asked for this. But I think the first question is, is the search valid? Because everything flows from that. The government needs the physical evidence to be admissible. The government took the position below in the appeal, as did the district court, mostly that, well, even if this was a non-routine search, it was justified by reason of suspicion. I think it's clear, and, Your Honor, Judge Trott hit it right on the head. The Supreme Court 9-0 has rejected that view of Molina-Terrazon that we get into these non-routine distinctions when we're talking about property at the border. The Supreme Court, and I'll read this part. The Court of Appeals took the term routine, fashioned a new balancing test, and extended it to searches of vehicles. I'm reading from page 3. But the reasons that might support a requirement of some level of suspicion in the case of highly intrusive searches of the person, dignity and privacy interest of the person being searched, simply do not carry over to vehicles. Complex balancing tests to determine what is a routine search of a vehicle, as opposed to a more intrusive search of a person, have no place in border searches of vehicles. The Court has adopted a categorical approach and basically gone back to pre-Molina-Terrazon law in the Ninth Circuit, which was governed by United States v. Rommel Science, which is distinguishing between personal searches of the person, which might require reasonable suspicion, and searches of a vehicle or property at the border, which require no level of suspicion at all. And I think that this Court would do a disservice in deciding this case based on the question of reasonable suspicion in light of the Supreme Court's recent pronouncement that reasonable suspicion simply doesn't matter, and I would like an opportunity to further brief that because Flores-Montano just came out. But it's clear in this case that the marijuana is validly admissible. Once we know that the marijuana is validly admissible, the question is, all right, what happens to the defendant's statements? The defendant is claiming that he was illegally arrested. And I think it's important. He was not handcuffed in that holding cell. In other words, this case is just like Bravo and just like Hernandez up to a point. In other words, he was taken out of the car at primary. He was temporarily handcuffed for the two- to three-minute walk over to the vehicle security office. And at that point in time, he was searched and the handcuffs were taken off. Now, in Bravo, the person was told why he was being handcuffed. Hernandez, they weren't told anything about why they were being handcuffed. And in this case, the person was told two things that were very important. One, he was told that you're being handcuffed for safety reasons. And secondly, you're going to be held there while we go search your car some more, which is very important. Now, the only factor that's different between this case and Bravo and Hernandez is it is the case that he was kept in a locked holding cell. And I think Your Honor hit the point right to the nail right on the head, which is why should that make a difference? Well, what if he'd been put in the back of a police car? Would that be any different? I don't think so, at the border. I mean, I think the test is, as announced by Bravo, is whether a reasonable, innocent person, under the circumstances, would believe that once the inspection or the detention was finished, would he be free to leave. In other words, once your vehicle is searched and they find no drugs, if they find no drugs, are you going to continue to be held there or are you going to be allowed to leave? The government has the plenary power at the border to hold a body so long as it's necessary to make sure that the body is allowed to come into the country. Absolutely. That's what the Supreme Court has said over and over and over. Absolutely. But in fairness and in candor, and while it wasn't specifically relied on by defense counsel, there is a fairly recent Ninth Circuit case called United States v. Butler. I'm aware of it because I also argued it. Judge Silverman wrote the opinion. And in that case, the district court had found that there was an arrest, not just a detention. And the court said, yes, that's true because the person was kept in a locked cell and his shoes and belt and personal items had been confiscated. That is what happened here. Now, I don't think it should matter whether the government detains somebody in a security office, in an open cell, or a closed cell. That's my opinion on the law. How do you think the recent Supreme Court case affects Butler, though? Well, again, in candor, the recent Supreme Court case is more of a search case with some language that deal with the amount of time of the delay, but they don't get into nuances of holding somebody in a locked cell versus an unlocked cell and confiscating his shoes and his belt in the meantime. In this case, were the facts the same in this case in the sense that there was testimony that the officer didn't have anything else to do with him? I mean, they were short-staffed. I mean, for his own security, and I would think you would remove a belt both for officer safety but also for the individual's safety because you don't want people to hang themselves in a holding cell. That's not part of our record. That is why they removed the belt. It's kind of standard police procedure.  With the exception being that here there is some evidence that the reason they did it was because there was one inspector by himself instead of two, which you normally have. I thought in Butler they found the contraband before they locked him to the bench. No. No. And that, I believe, is there are cases that hold that. And, again, it wasn't relied on. Doe. Doe. But specifically, Butler does seem to be on point absent the reason for it. But I would suggest that I do think it's different from where you hold somebody from where you start to take his clothes off or you take his shoes off or things of that nature. That may suggest a greater intrusiveness or that the person is not really free to leave. I do think it's important, though, if the court would recognize that where you hold somebody absent confiscating property because I've spoken to customs and said it surely shouldn't matter where you hold them if you have security reasons to hold them, but you really don't need to confiscate the property in the meantime, and I don't think you're going to see any more confiscation of property cases. But in candor, this case is like Butler relative to that. There is confiscation instead of just holding somebody. But what I think the court what I would hope the court would do is to say we don't need to determine whether Butler has been overruled by Flores Matano. We don't need to determine whether Butler is affected by the fact that there was only one person to watch him, and we don't need to determine whether Butler is determined by the fact that it wasn't just holding somebody but you had the confiscation of property because even if you assume arguendo that there was an illegal arrest, we're talking about three to five minutes. In other words, everything is fine. The only argument is once you lock him behind the cell and you take his property, he's illegally arrested for three to five minutes. In the meantime, they go out subsequent but a short period of time. They go out. They find the marijuana in the vehicle. They come back to him, tell him he's under arrest. And two and a half hours later, he is interviewed. And that gives us the independent intervening Manuel argument. The district court judge in this case, Judge Moskowitz, at ER 152-156, spent four pages talking about the effect of the Manuel decision, pointing out that there was no exploitation of that three to five minutes. In other words, no physical evidence was seized from him. No statements were made. And it's clear, and this is the rationale of Manuel, the case is totally different from Dunaway and Brown. I'm reading Manuel at page 912. Because the probable cause was amply demonstrated before the officers began their interrogation. We therefore hold, even if the arrest was illegal, intervening events purged the initial taint of illegality and the confession did not violate the Fourth Amendment. This Manuel independent intervening probable cause has been argued before this court at least six times that I know of. In two cases, two published opinions, United States v. Bravo and United States v. Sedeno-Ariano, the court simply didn't reach it. In a footnote, they say we expressly don't decide it. There have been at least four other times where this issue was decided by this court, but it's nothing that can be relied on by the district court. It's a recurring issue because what ends up happening is you get these extended hearings, whether it's a detention, whether it's an arrest, the extent of it, where, in fact, as far as the law is concerned, it doesn't matter. Because even if you assume that there was an illegal arrest for three minutes, they subsequently find the drugs, his condition really doesn't change, they come back to him, tell him he's under arrest, and he's interviewed two hours later. The search was going to take place regardless of the fact that he was put in a holding cell and his shoes were confiscated or he was kept anywhere else. What's the procedure under federal law when a federal agent tells somebody you're under arrest? And then ten minutes later they decide, gee whiz, there really isn't any case after all, so you're not under arrest. What's the procedure that a federal agent has to go through? You're released at that point, is what should happen. Now, you're telling somebody he's under arrest is a factor. If you tell him he's not under arrest, that's a factor. But there is such a thing as a de facto arrest. In other words, somebody can be arrested even if somebody tells him he's not under arrest if all the circumstances point to it. They handcuff him without removing the handcuffs. There's a statute that covers this in California, Section 987A of the Penal Code, talks about this, deemed not arrested. In other words, they can literally undo the arrest by deeming somebody not arrested. Is there any federal statute that's comparable to that? I'm not aware of a federal statute that's complicated. I have seen cases where they've told somebody, we've changed our mind, you're not under arrest, you're free to go. Now, the question is during that three to five minutes, generally it would arrive in a civil suit for false arrest for what happens as far as damage is concerned for the three to five minutes. But I hope I've given the Court the flavor that, yes, I do think that the government at the border can hold somebody for security reasons. It doesn't matter where we hold them. Confiscating shoes, removing property, which isn't going to be done, I'm hoping, anymore, does put this under the Butler ambit. And while I think Butler... Why are you not allowing confiscation of shoes? I mean, I've seen any number as a federal judge of warnings recently that shoes contain firearms and bombs. What should be happening, well... Well, what do I have to do at the airport? I've got to take my shoes off every time I go through. Yes, no, no, I'm... I don't have to confiscate shoes at the border. No, no, I'm... I'm getting these things in my office that say shoes like Richard Reed have bombs in them. They're used to conceal firearms. I'm not saying that at all. What I'm saying is Butler decided the case, saying that there was an arrest, because the person was held in a locked cell and the shoes and property were confiscated. That's Butler. That's not a USA Paddle tool. What should be happening with the shoes is basically this. Customers can search the shoes the same way they can search the person, and they can search for the effects. They search the shoes. They make sure there's no knife in it. They make sure there's no weapon in it. They make sure that there is no contraband in the shoes. Generally, according to policy, they return the shoes. That's what's... But if you forget to give the shoes back, you're under arrest? Well, I wish I had written a Butler opinion, but I didn't. But the Butler panel went off on the confiscation of property. Now, in Bravo, a different panel said that there was no arrest. There was a lot of talk about the shoes, but they pointed out, and I handled the Bravo case, that the shoes were searched, but they were returned to the person. In other words, they weren't confiscated. And, yes, we absolutely should be searching shoes because the danger inherent in what you can have in the shoes at that point in time. But, you know, one panel can't overrule another panel decision. I'm not saying that I think the Butler case was rightly decided. What I am saying, though, is I think we can't hold somebody anywhere. That's an important distinction. But even if Butler was rightly decided, even if this person was arrested for two to three minutes, it's clear that there was independent intervening probable cause because the drugs were seized separate, searched and seized separate. They came back to the person. He wasn't interviewed for two hours later. This case is right on with Manuel, and it would be very important because every week we're back in district court. The government says Manuel controls. The district court relies on Manuel. Defense counsel says, no, Manuel is distinguishable. And as I say, I know of at least six cases where we've been up on the Manuel issue before the court, and I believe it's important to get it decided one way or the other. I wish we could relook at Butler, and maybe Butler needs to be reviewed now in light of the fact that we have Flores-Montano. I am hoping for the opportunity to file a supplemental briefing on Flores-Montano if that's okay with the court. Do you have anything else, counsel? No, thank you. I have some questions. Melina Terrazon didn't fare very well at Chief Justice Rehnquist's hands in Flores-Montano. I argued Melina Terrazon, and I've been working two years on the Melina Terrazon issue, and I think the Supreme Court got it right because there is a fundamental distinction between the search of property, and I'm hoping that this panel recognizes that and decides this search issue based on the property-person distinction, not on a reasonable suspicion distinction because, you know, I think that that's important. I think it's also important, as Flores-Montano noted, there are 3,000 vehicle drug cases per year at the California ports of entry. For the government to be obligated in 3,000 cases a year to produce two or three border inspectors, pulling them off the line and testifying on the nuances of seeing floors, seeing scratches on gas tanks, dogs, having to produce discovery for dogs if we're relying on reasonable suspicion, instead of the categorical approach, if it's a property search at the border, it's per se reasonable, as recognized by the Supreme Court, is a fundamentally important decision, and I'm hoping that this panel recognizes this. And should I assume that I can file a letter brief, or would the Court prefer not to see that? We'll let you know if we need anything. Okay. Thank you very much. I would respectfully suggest, in response to Mr. O'Toole's argument, that this Court does actually not need supplemental briefing in this case. What about the manual point? What about the manual point? I would argue that manual doesn't apply here because it dealt with a completely different issue, whether ordering an arrest without probable cause makes a later arrest illegal. As I said before, Manuel argued that his arrest was illegal because it was ordered by tribal police officers before they had probable cause to believe. The facts of this case suggest that your client's going nowhere. He's sitting over to the side. Then they check the car, and they find all the contraband. That's true. But in the Manuel case, what he was arguing was that his arrest was ordered before they had probable cause to believe that he was involved in any sort of murder. And the Court said in that case they couldn't find when the arrest was ordered, but by the time he was actually located and arrested, the officers had more than enough independent probable cause to support his search in that case, regardless of when the arrest was ordered. Here, the actual arrest here was conducted without probable cause. The discovery of the evidence in this case was not a sufficient intervening event that would break the causal connection between the arrest and connection to permit the confession to be an act of free will because, as we stated in the briefs, it never really removed the defendant, in this case Mr. Flores Barajas, from the coercive environment created by the law enforcement officers. In fact, Hernandez specifically held that the confirmation that marijuana was in the minivan was enough to transform Hernandez's detention in that case into an arrest. Now, in Manuel, because Manuel only addressed the question of whether an arrest was ordered without probable cause, I would state that it does not apply here. And, in fact, Manuel, like Ms. Rotul was saying, expressly distinguished from circumstances in which someone was arrested without probable cause and statements were taken after that. Manuel said if that was the case, then that arrest would be illegal and the statements would be subject to suppression. I would argue as well, though, that even if this Court agrees with the government's reading of Manuel, that this Court must disregard it because it conflicts with Taylor v. Alabama. In Taylor, the Supreme Court held that the filing of an arrest warrant while Taylor was being interrogated did not purge the taint of an unlawful arrest and allow his post-arrest statements to be admitted. The Court stated in that case that a confession produced during custodial interrogation must be excluded unless intervening events were sufficient to break the connection between an unlawful arrest and a confession so that the confession was sufficiently an act of free will to purge the primary taint. They said that the warrant in that case, the filing of the warrant, had nothing to do with whether there was a break between the arrest and the confession and expressly distinguished from cases like Johnson v. Louisiana in which a defendant after an unlawful arrest was brought before a magistrate advised of his rights. There are other circumstances that this Court has recognized, like a release from custody, a consultation with counsel, which would be sufficient to break the taint of the unlawful arrest. Here we're dealing with the same circumstance. As we've argued before, Mr. Flores-Barajas was arrested without probable cause. There was no release. There was no appearance before a magistrate. There was no consultation with counsel or anything to break the taint of the unlawful arrest in this case. Since Taylor conflicts with Manuel on the point of whether the later development of probable cause, whether a warrant was obtained or not, is sufficient to break an arrest, break the connection between an unlawful arrest and a confession, this Court must disregard Manuel. As I've stated before as well, Manuel involves truly independent evidence. The Court stated that regardless of when the arrest was ordered, the police officers in that case gathered evidence independent of his confession to justify his arrest and also ultimately to take a statement from him. They stated some statements. They cited some statements of two eyewitnesses, which reported actually seeing Manuel in that case involved in the actual murder. Here we're not dealing with a circumstance where his confession, Mr. Flores-Barajas' confession, was independent of any search that occurred before it. In fact, by asking Mr. Flores-Barajas to exit his car, by asking him for his immigration documents, and by ultimately locking him in a holding cell, the officers were depriving him of his possessory interest in the car. By making that action, that allowed them to search the car, and even Officer Valenzuela, at page 116 of our excerpt of record, conceded on cross-examination during the motion hearing that he did not believe that marijuana smuggling occurred until he found the drugs in the car through the probe, regardless of when it occurred. At that point, he used the evidence that he found to confront Mr. Flores-Barajas with that evidence and to ultimately tell him that officers would come by to speak with him. By confronting him with the evidence, Hernandez holds at the minimum that by confirming that there's marijuana in the car, that transforms a detention into an arrest. In other circumstances, for instance in the Miranda context, confronting someone with incriminating evidence is sufficient to constitute an interrogation because it makes it more likely, not less likely, that Mr. Flores-Barajas will act of his free will. It makes it more likely that Mr. Flores-Barajas will make a statement basically to exonerate himself and will not act of his free will. Thank you, Counsel. Your time has expired. Thank you. The case is argued as ordered and submitted. We appreciate your assistance. It's a series of interesting interrelated issues. And we'll move on then to Wheaton v. Rowe.
judges: Trott, Callahan, Magill